UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ROBERT J. HARRISON,                          )
                                             )
        Plaintiff(s),                        )
                                             )
    vs.                                      )          Case No. 4:05CV1028 JCH
                                             )
ELIZABETH CONLEY, et al.,                    )
                                             )
        Defendant(s).                        )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants Elizabeth Conley, Benjamin Gaddy, and Melissa Jaegers' Motion for Summary Judgment, filed April 21, 2006. (Doc. No. 19). The matter is fully briefed and ready for disposition.

## BACKGROUND

By way of background, from May 4, 2000, until April 21, 2004, Plaintiff resided at the Missouri State Penitentiary. (See Defendants' Statement of Uncontroverted Medical Facts ("Defendants' Facts"), ¶ 1). On December 26, 2003, a referral request was submitted for Plaintiff to have a surgical consult relating to plantar warts[1] on the bottom of his right foot. (Defendants' Facts, ¶ 9; see also Doc. No. 19-8, P. 29). The referral request was approved for Defendant Dr. Benjamin Smith Gaddy, II, to evaluate Plaintiff. (Defendants' Facts, ¶ 9).

On February 3, 2004, Defendant Gaddy evaluated Plaintiff, and noted he had plantar warts on the bottom of both feet. (Defendants' Facts, ¶ 10; see also Doc. No. 19-8, P. 30). Defendant Gaddy submitted a referral request for Plaintiff to have the warts removed, and that request was

---

[1] Plantar warts are growths on the soles of the feet, generally no more than a few millimeters in size, and caused by a virus. (See Declaration of Benjamin Smith Gaddy, II, attached to Defendants' Motion for Summary Judgment as Exh. B, ¶ 4).

approved by the non-Defendant Associate Statewide Medical Director.  (Defendants' Facts, ¶ 10).

On March 9, 2004, Plaintiff had plantar warts removed from both feet by Defendant Gaddy.[2] (Doc. No. 1-1, Plaintiff's Complaint under 42 U.S.C. § 1983 ("Complaint" or "Compl."), P. 13). According to Plaintiff, Dr. Gaddy performed the procedure by applying local anesthesia, and then using a surgical scalpel to cut away the warts.  (Id.; see also Defendants' Facts, ¶ 11).  When Plaintiff complained of pain after the surgery, Defendant Gaddy allegedly refused to provide crutches or a wheelchair, instead directing Plaintiff to return to his cell on foot.  (Compl., P. 14).[3]

Plaintiff alleges that upon returning to his cell, he discovered blood had soaked through his bandages.  (Compl., P. 14).  Plaintiff therefore returned to the medical unit, and was met in the hallway by Defendant nurse Melissa Jaegers.  (Id.).  According to Plaintiff, Defendant Jaegers gave him more gauze and bandages, but refused to apply them, instead insisting that Plaintiff tend to the wounds himself.  (Id., PP. 14-15).[4]

Plaintiff returned to the medical unit on March 10, and March 11, 2004, for "foot soaks." (Compl., P. 15).  On March 11, 2004, Defendant Jaegers issued Tylenol for the pain Plaintiff was experiencing.  (See Doc. No. 19-8, PP. 37-39).  On March 13, 2004, Plaintiff again returned to the medical unit.  At that time, non-Defendant nurse Vicki Maness noted both surgical sites were free of redness, swelling, and active drainage.  (Id., P. 48).  Due to Plaintiff's complaints of pain, however,

---

[2] Plaintiff was educated about the procedure, and the risk of infection, scarring, and reoccurrence of the plantar warts.  (See Defendants' Facts, ¶ 11; see also Doc. No. 19-8, PP. 33-36).

[3] Defendant Gaddy testified that he had performed over 450 of these procedures during his thirty-eight years of practice, and that all had been done as office procedures, with the patient walking out of the office after the procedure.  (Gaddy Declaration, ¶ 4).  Defendant Gaddy further testified that post-procedure bleeding and mild pain are potential occurrences, and are expected to improve over the course of several days when post-procedure instructions are followed.  (Id.).

[4] Plaintiff alleges while he attempted to re-wrap his bandages, Defendant Jaegers went outside for a "smoke break."  (Compl., P. 15).

non-Defendant Dr. Lamour approved a one week lay-in from work and school. (Id., PP. 49, 50).

Plaintiff further was issued gauze 4X4s to place in his socks. (Id., P. 49).

On March 19, 2004, Plaintiff submitted an Informal Resolution Request ("IRR"), claiming he

was still bleeding from the surgery on his feet, and that, "Not 'ONE' medical personel [sic] tried or

want to do anything about it." (See Doc. No. 19-9, PP. 52-54). On April 12, 2004, Plaintiff was

seen by non-Defendant Dr. Alfred Garcia, who noted bloody drainage and pus within the wound.

(See Doc. No. 19-8, P. 55). Dr. Garcia thus prescribed an increase in Plaintiff's existing antibiotics.

(Id., P. 56). On April 13, 2004, non-Defendant nurse Mary Sumpter documented the above medical

treatment Plaintiff had received, and then denied Plaintiff's IRR. (See Doc. No. 19-9, P. 51).[5]

On or around April 21, 2004, Plaintiff was transferred to the Eastern Reception and

Diagnostic Correctional Center. (Compl., P. 16). On April 29, 2004, Plaintiff attended morning sick

call, and complained of lingering pain in his feet. (Id.). Plaintiff filed an IRR that same day. (See

Doc. No. 19-9, PP. 64-66). Plaintiff then was seen by non-Defendant Dr. Christine Jones on May

24, 2004. At that time, Dr. Jones noted no pus, drainage, or blood; she concluded the surgical site

was closed, and that healing was "adequate and expected." (See Doc. No. 19-8, PP. 62-64).[6] On

July 13, 2004, non-Defendant Gerald Jorgenson documented the above medical treatment Plaintiff

had received, and then denied Plaintiff's IRR. (See Doc. No. 19-9, P. 63).[7]

On September 14, 2004, Plaintiff was seen by non-Defendant nurse-practitioner Pamala

---

[5] Plaintiff filed an Offender Grievance, which was denied as untimely. (See Doc. No. 19-9, PP. 55-57). On March 14, 2005, Plaintiff's Grievance Appeal was denied on the merits by non-Defendant J. Cofield, and Defendant Elizabeth Conley. (See Id., PP. 58-62).

[6] On July 1, 2004, Dr. Jones requested and received approval for Plaintiff to receive shoe inserts. (See Doc. No. 19-8, PP. 67-68).

[7] Plaintiff's Offender Grievance and Grievance Appeal were denied on the merits, the latter after having been reviewed by Defendant Elizabeth Conley. (See Doc. No. 19-9, PP. 67-71).

Swartz, who noted a recurrence of plantar warts, and recommended a referral to Defendant Gaddy. (See Doc. No. 19-9, PP. 1-2). The referral was deferred, with a request for further clinical information, and ultimately denied, for failure to submit materials meeting the criteria. (Id., PP. 3-5; see also Defendants' Facts, ¶ 24). Plaintiff was issued a new pair of shoe inserts on September 16, 2004. (See Doc. No. 19-9, P. 8).

Plaintiff was again seen by nurse-practitioner Swartz on October 21, 2004. (See Doc. No. 19-9, PP. 9-11). He was then seen by non-Defendant Dr. Marcos Nalagan on December 30, 2004, who recommended that Plaintiff be scheduled for a trimming of his plantar warts. (Id., PP. 12-13). Dr. Nalagan apparently trimmed the warts on January 7, 2005. (Id., PP. 16-17; see also Compl., P. 18).

On January 20, 2005, non-Defendant Dr. Harry Haas recommended that Plaintiff be referred to a podiatrist. (See Doc. No. 19-9, P. 22). The referral was deferred, pending a request for more clinical information, and ultimately withdrawn. (Id., PP. 22-24). On February 14, 2005, Plaintiff was seen by non-Defendant Dr. Carlos Hernandez, who recommended soft insoles, a referral to a podiatrist, and a lay-in from work for fourteen days. (Id., P. 27). Plaintiff further was referred for a possible second surgical excision by Defendant Gaddy, subject to the condition that Plaintiff understand the same outcome was likely. (See Defendants' Facts, ¶ 29).[8] Plaintiff received the soft insoles on March 17, 2005. (See Doc. No. 19-9, P. 34).[9]

_____

[8] Although the record is not entirely clear, Plaintiff apparently did not undergo a second consult or surgery with Defendant Gaddy.

[9] Plaintiff submits evidence he received a one month lay-in, stating no prolonged standing, from non-Defendant nurse Tina Hays on May 16, 2005. (See Doc. No. 1-2, PP. 15, 16). Finally, on September 22, 2005, Plaintiff was again seen by Dr. Nalagan, who recommended a Mediplast Topical Patch for Plaintiff's remaining very small, superficial, non-infected plantar wart. (See Doc. No. 19-9, PP. 35-37).

Plaintiff filed the instant Complaint on June 29, 2005. (Doc. No. 1-1). In his Complaint, brought pursuant to 42 U.S.C. § 1983, Plaintiff alleges Defendants Elizabeth Conley, Benjamin Gaddy, and Melissa Jaegers[10] violated his Eighth Amendment rights, by demonstrating deliberate indifference to his serious medical need. (Id., P. 20). As stated above, Defendants filed the instant Motion for Summary Judgment on April 21, 2006, asserting Plaintiff did not suffer from a serious medical need, and further was not denied treatment for his condition. (Doc. No. 19-1).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson,

---

[10] Plaintiff originally named Christine Jones, Paula Atkins, Andrea Doe, and George Lombardi as Defendants in his Complaint. Plaintiff voluntarily dismissed George Lombardi as a Defendant, however, and Plaintiff's claims against Christine Jones, Paula Atkins, and Andrea Doe were dismissed without prejudice for failure to serve. (See Doc. Nos. 31, 35).

477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

The Eighth Circuit has held that, "[t]he Eighth Amendment requires prison officials to provide humane conditions of confinement, and [o]ne condition of confinement is the medical attention given to a prisoner." Aswegan v. Henry, 49 F.3d 461, 463-64 (8th Cir. 1995) (internal quotations and citations omitted). "To succeed on a claim of deprivation of medical care in violation of the Eighth Amendment, plaintiff must prove that defendants were deliberately indifferent to his serious medical needs." Moots v. Lombardi, 2005 WL 4541944 at *5 (E.D. Mo. Feb. 10, 2005), citing Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997).

> There is both an objective and subjective component to a claim of deliberate indifference. A plaintiff must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.

Tlamka v. Serrell, 244 F.3d 628, 633 (8th Cir. 2001) (internal quotations and citation omitted); see also Chance v. Armstrong, 143 F.3d 698, 702 (2nd Cir. 1998) (internal quotations and citation omitted) ("An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). "Mere negligence or medical malpractice [is] insufficient to rise to a constitutional violation." Moots, 2005 WL 4541944 at *5, citing Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997).

Upon consideration, the Court finds even assuming, arguendo, that Plaintiff could establish the existence of a serious medical need, he cannot show the remaining Defendants exhibited deliberate indifference to that need. Specifically, with respect to Defendant Gaddy, as noted above he testified that he had performed over 450 procedures similar to Plaintiff's, and had provided the same post-procedure care for all of them. (See Gaddy Declaration, ¶ 4). Defendants further submit the Declaration of Dr. Thomas Baker, a licensed physician, who testified as follows:

> Based on my review of Mr. Harrison's medical records, I do not believe that Dr. Gaddy treated Mr. Harrison with deliberate indifference. Dr. Gaddy provided Mr. Harrison with physical evaluation and assessments relating to his plantar warts and other unrelated medical needs, education relating to the treatment of plantar warts, education relating to the risks and benefits of surgical removal of his plantar warts, surgical removal of his plantar warts and post-procedure wound and orders for Tylenol and Darvocet as needed for pain after the surgical removal of his plantar warts. The care which Dr. Gaddy provided to Mr. Harrison fell well within the standard of care in the community.

(Baker Declaration, ¶ 6). With respect to Defendant Jaegers, as noted above Plaintiff admits she gave him gauze and bandages, and alleges only that she required Plaintiff to apply the bandages himself. (Compl., PP. 14-15). Defendants, however, submit Dr. Baker's evaluation of Defendant Jaegers' conduct, as follows:

> Based on my review of Mr. Harrison's medical records, I do not believe that Ms. Jaegers treated Mr. Harrison with deliberate indifference. Ms. Jaegers provided Mr. Harrison with nursing evaluation in response to his medical services requests and Tylenol. The nursing care that Ms. Jaegers provided to Mr. Harrison fell well within the standard of care in the community.

(Baker Declaration, ¶ 7). Finally, with respect to Defendant Conley, Plaintiff alleges her only involvement with Plaintiff's medical care was as a reviewer of the denials of his Grievance Appeals. Defendant Conley determined Plaintiff's Appeals were meritless, as he received the care to which he was entitled. (See Doc. No. 19-9, PP. 61-62, 71). As described in great detail above, Plaintiff did receive extensive care for his plantar warts, as prison medical records indicate he was seen by medical

personnel at least fifteen times between December, 2003, and September, 2005. Under these circumstances, the Court finds no evidence that Defendant Conley knew of, but deliberately disregarded, Plaintiff's serious medical needs. Defendants' Motion for Summary Judgment must therefore be granted. See Dulany, 132 F.3d at 1240 ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment.").[11]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Elizabeth Conley, Benjamin Gaddy, and Melissa Jaegers' Motion for Summary Judgment (Doc. No. 19) is **GRANTED**, and Plaintiff's claims against Defendants Conley, Gaddy, and Jaegers are dismissed with prejudice.[12] An appropriate Judgment will accompany this Memorandum and Order.


Dated this 25th day of January, 2007.


/s/ Jean C. Hamilon
UNITED STATES DISTRICT JUDGE

---

[11] In his response to Defendants' Motion for Summary Judgment, Plaintiff emphasizes that nurse-practitioner Swartz and Dr. Haas's recommendations for a referral to a specialist were deferred or denied. (See Doc. No. 38). While this may be true, Plaintiff presents absolutely no evidence that the recommendations were deferred or denied by Defendants Conley, Gaddy, or Jaegers.

[12] As noted above, Plaintiff's claims against all other Defendants have previously been dismissed.